UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Jae'Quann Marquis Harvard #L066795,
　　　　　　　　　　Plaintiff,

FILED
2019 NOV -6 PM 2: 17
CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

V.

Case No.: 3:19cv147-J-20PDB

W. Blitch, et. al.,
　　　　Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

### Statement Of The Case:

This is a civil rights case filed under 42 U.S.C. § 1983 by a state prisoner, Pro Se, and asserting claims for the unconstitutional excessive force used against her sadistically and maliciously to cause her harm and the wanton infliction of pain, all in violation of the Eighth Amendment to the U.S. Constitution. The plaintiff seeks damages to all claims: compensatory, punitive, mental, and emotional injury damages.

### Statement Of Facts:

On December 17th, 2018 the Plaintiff started a hunger strike. On December 19th, 2018 at approximately 9:30am - 10:00am the plaintiff was taken out of her cell (B12033) to Ho ka medical. During this time Captain W. Blitch informed the plaintiff that he was going to use chemical agents on her, then force the cell extraction team on her to teach her a lesson about cutting herself and refusing to walk on his shift (referring to incident occurring on 12-16-18 at approximately 3:30 pm).

At approximately 10:45am - 11:00am on 12-19-18 the plaintiff was returned back to her cell (B12033). Approximately 5 minutes later Captain W. Blitch came to the plaintiff cellfront and stated; "Are you ready?", then departed. Dr. M. Emanoilidis (BY.D) and mental health professional ("MHP") K. Dahlman came to the plaintiff cellfront (B12033) where she told them of Captain W. Blitch threats and beginning to inflict harm upon herself. Dr. M. Emanoilidis then departed and ordered that the plaintiff receive a Emergency Treatment Order ("ETO") shot and be placed on Self-Harm Observation Status ("SHOS"). Dr. M. Emanoilidis returned and told

(1.)

the Plaintiff his disposition and the Plaintiff ceased inflicting harm upon herself. The Plaintiff advised A. Dahlman ("MHP"), Captain W. Blitch, Lieutenants Kyle Knight and T. Tomlin that she wanted to submit to restraints to be escorted to medical to recieve the "ETO" shot and be placed on "SHOS". They all ignored her. A. Dahlman ("MHP") stood at the Plaintiff cellfront to observe her.

At approximately 11:15 - 11:20 am A. Dahlman ("MHP") departed from the Plaintiff cellfront. The cell extraction team (Sergeants Porr, Austin Merritt, Brett Gillespie, Wesley Rogers, and Officer T. Reasor) came to the Plaintiff cellfront. Lieutenants Kyle Knight and T. Tomlin asked the Plaintiff to submit to restraints. The Plaintiff advised them that she wanted to submit. Lieutenant T. Tomlin winked his eye at the Plaintiff before Lieutenant Kyle Knight ordered that the cell door be opened for the cell extraction team to enter the Plaintiff cell.

The Plaintiff seen that the cell extraction team was about to be forced on her, so she laid on the floor on her stomach with her hands behind her back. Team member 1 (Sergeant Porr) threw the body shield aside and beginned to twist the Plaintiff left wrist. Team member 2 (Sergeant Austin Merritt) got on the Plaintiff right side and beginned to punch the Plaintiff in the side of her head as Team member 3 (Brett Gillespie) grabbed the Plaintiff around her neck and banged her head on the concrete floor awhile team member 4 (Sergeant Wesley Rogers) and Team member 5 (Officer T. Reasor) blocked the use of force camera and yelled; "Stop Resisting!" Captain W. Blitch, Lieutenants Kyle Knight and T. Tomlin watched the physical brutality and yelled; "Stop Resisting" when the Plaintiff wasn't resisting.

The Plaintiff was then placed on restraints and taken to the medical emergency room to recieve a Post Use Of force examination where strips was placed over her left eyebrow, the middle of her forehead and she was administered the "ETO" shot. Captain W. Blitch then told the Plaintiff ;"I told You I was Gonna Get You". The Plaintiff was then placed on "SHOS".

On December 20th, 2018 the Plaintiff was taken to Jacksonville Memorial Hospital for a blood transfusion. There the Plaintiff complained about her swollen wrist and her swollen left eyebrow area. A X-ray was taken of the Plaintiff left wrist, where it was determined to be fractured and a splint was placed around it. A CT scan was conducted of the Plaintiff head and face, where it was determined that the Plaintiff suffered

fractured bones around her left eye area. Plaintiff alleges that as a result of the sadistic and malicious use of force the Plaintiff continues to suffer from a neurovascular disorder, migraine headaches, and paranoia.

## ARGUMENT

### The Court Should Appoint Counsel For The Plaintiff

In deciding whether to appoint counsel for an pro-se litigant, the court should consider "the factual complexity of the case, the ability of the pro-se litigant to investigate the facts, the existence of conflicting testimony, the ability of the pro-se litigant to present his claim and the complexity of the legal issues." Abdullah v. Gunter, 949 F.2d 1032, 1035 (8th Cir. 1991)(citation Omitted).

In addition, courts have suggested that the most important factor is whether the court case appears to have merit. Carmona v. U.S. Bureau of Prisons, 243 F.3d 629 (2d Cir. 2001). Each of these factors weighs in favor of appointment of counsel in this case.

1. Factual Complexity. The Plaintiff alleges that five of the defendants physically brutalized her sadistically and maliciously to cause her harm and the wanton infliction of pain. She further alleges that three of the defendants watched and failed to stop them. The sheer number of claims and the numerous defendants makes this a factually complex case.

"Where the legal issues are complex, it will probably serve everyone involved if counsel is appointed." Jabron, 16 F.3d at 1516; Maclin, 650 F.2d at 889 ("Where the law is not clear, it will often best serve the end of Justice to have both sides of a difficult legal issue presented by those trained in legal analysis.")

In this case, the ultimate issue appears relatively simple -- whether excessive force was used on the Plaintiff sadistically and maliciously. A lay person, like Ms. Harvard, should be allowed to comprehend what she has to prove when the legal issue is understandable.

However, comprehension alone does not equal ability to translate that understanding into Presentation. While the ultimate issue may be comprehensible, courts must still look to the proof going towards the ultimate issue and the discovery issues involved.

(3.)

2. *The Plaintiff's ability to investigate.* The Plaintiff is locked up in a mental health secured treatment unit, and has no ability to investigate the facts. For example, she is unable to identify, locate, and interview the inmates who were housed in nearby cells and who saw some or all of the physical brutality. He is in the same situation with regard to developing the facts as an inmate who has been transferred to a different institution, a factor that several courts have cited in appointing counsel. (*Tucker v. Randall*, 948 F.2d 288, 391-92 (7th Cir. 1991); *Eatson v. Coughlin*, 679 F.Supp. 270, 273 (W.D.N.Y. 1988). In addition, this case will require considerable discovery concerning the identity of witnesses, the officer's reports and statements about the incident, any prior history of excessive use of force by the officers, and the Plaintiff's medical history. (*Parham v. Johnson*, 126 F.3d 454, 459 (3d Cir. 1997) (holding counsel should have been appointed because "Prisoner's lack of legal experience and the complex discovery rules clearly put him at a disadvantage in countering the defendant's discovery tactics... these discovery rules prevented the Plaintiff from presenting an effective case below.")

3. *Conflicting testimony.* The Plaintiff's account of her beatings by Defendants is squarely in conflict with what the defendants says happened. This aspect of the case will be a credibility contest between the defendants and the Plaintiff (and such inmate witnesses as can be located). The existence of these credibility issues supports the appointment of counsel. *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996); *Eatson v. Coughlin*, 679 F.Supp. at 273)

4. *The ability of the indigent to present her claim.* The Plaintiff is a Pro-Se litigiant proceeding in forma pauperis with no legal training, a factor that supports the appointment of counsel. (*Forbes v. Edgar*, 112 F.3d 262, 264 (7th Cir. 1997)). In addition, she is confined in a psychiatric secured treatment unit deCREcMation with very limited access to legal materials. (*Rayes v. Johnson*, 969 F.2d 700, 703-04 (8th Cir. 1992). (citing lack for ready access to a law library as a factor supporting appointment of counsel.

(4.)

5. *Legal Complexity.* The Plaintiff have asked for a Jury trial on all issues triable by Jury, which requires much greater legal skill than the Plaintiff has or can develop. (*Solis V. County of Los Angeles*, 514 F.3d 946, 958 (9th Cir. 2008)(Prisoner with eighth grade education and no legal training is "ill-suited" to conduct a Jury trial).

6. *Merit of the case.* The Plaintiff's allegations, if proved, clearly would establish a constitutional violation. The unprovoked and injurious beatings alleged in the complaint clearly states an eighth amendment violation. (*Hudson V. McMillian*, 503. U.S. 1, 112 S. Ct. 995 (1992)). On it's face, then, this is a meritorious case.

## CONCLUSION

For the foregoing reasons, the court should GRANT the Plaintiff's Motion and appoint counsel in this case.

Dated: November 4th, 2019

/s/ JaeQuann #L66795
MS. JaeQuann Marquis Harvard #L66795
Wakulla Correctional Institution - Annex
110 Melaleuca Drive
Crawfordville, Florida 32327

(5.)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing: ① Motion for the appointment of counsel, ② Declaration in support of Plaintiff's Motion for the appointment of counsel, and ③ Memorandum of Law in support of Plaintiff's motion for the appointment of counsel, has been furnished by U.S. mail to: U.S. District Court, Middle District of Florida, Jacksonville Division, 300 N. Hogan Street, Suite 9-150, Jacksonville, Florida 32202.

On this 4th Day of November, 2019.

/S/ Jac'Quann Harvard #L66795
MR. Jac'Quann Marquis Harvard #L66795
Wakulla Correctional Institution - Annex
110 Melaleuca Drive
Crawfordville, Florida 32327

LEGAL MAIL
Provided to
Wakulla CI

NOV 04 2019

FOR MAILING

( 6.)