## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JAC'QUANN HARVARD,

      Plaintiff,

v.

MARK S. INCH, as Secretary of the
Florida Department of Corrections,
WILLIAM B. BLITCH, KYLE D.
KNIGHT, TEDDY L. TOMLIN, SGT.
PORR, AUSTIN P. MERRITT, BRETT
GILLESPIE, WESLEY E. ROGERS, and
TYRELL M. REAGOR, individually,

      Defendants.

Case No. 3:19-cv-1147-J-20PDB

## AMENDED COMPLAINT FOR DAMAGES

    Plaintiff sues Defendants, and alleges:

1.    This is an action for damages under 42 U.S.C. §§ 1983, and 1988.

2.    This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

3.    Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant

    to 28 U.S.C. § 1367, to consider the state law claims alleged herein.

4.    Plaintiff's claim is also based on Title II of the Americans with Disabilities

    Act, 42 U.S.C. § 12131, and 12133, and § 504 of the Rehabilitation Act.

5.    Venue is asserted in the Middle District of Florida, Jacksonville Division,

    because Defendants are found, and causes of action arose, here.

6.    At all times material hereto, Plaintiff JAC'QUANN HARVARD was a

prisoner of the Florida Department of Corrections, Florida State Prison.

7.     At all times material hereto, Defendant MARK S. INCH was Secretary or the Florida Department of Corrections. He is sued in his official capacity.

8.     At all times material hereto, Defendant WILLIAM B. BLITCH was a Captain at Florida State Prison. He is sued individually.

9.     At all times material hereto, Defendant KYLE D. KNIGHT was a Lieutenant at Florida State Prison. He is sued individually.

10.    At all times material hereto, Defendant TEDDY L. TOMLIN was a Lieutenant at Florida State Prison. He is sued individually.

11.    At all times material hereto, Defendant KENNETH PORR was a Sergeant at Florida State Prison. He is sued individually.

12.    At all times material hereto, Defendant AUSTIN P. MERRITT was a Sergeant at Florida State Prison. He is sued individually.

13.    At all times material hereto, Defendant BRETT GILLESPIE was a Sergeant at Florida State Prison. He is sued individually.

14.    At all times material hereto, Defendant WESLEY E. ROGERS was a Sergeant at Florida State Prison. He is sued individually.

15.    At all times material hereto, Defendant TYRELL M. REAGOR was an Officer at Florida State Prison. He is sued individually.

16.    All individual Defendants named above acted under color of law.

## **Common Allegations of Fact**

1.  Plaintiff Jac'Quann (aka Admire) Harvard entered the Florida Prison system on July 14, 2009 through the South Florida Reception Center.

2.  Ms. Harvard is trans-gender and identifies as a woman but the Florida Department of Corrections (FDC) treats her as a man.

3.  Plaintiff has been diagnosed with Gender Dysphoria, Schizoaffective Disorder, Depression and Anxiety.

4.  On July 29, 2015, Plaintiff was moved to Florida State Prison (FSP).

5.  On April 28, 2016, Plaintiff moved to Union Correctional Institution.

6.  On July 13, 2016 Plaintiff was moved back to Florida State Prison.

7.  During her time at FSP, Plaintiff was constantly confined in Solitary.

8.  As with most persons with mental health problems, solitary confinement has exacerbated her symptoms and reduced her access to treatment.

9.  On December 16, 2018, as Plaintiff was being escorted to medical for self-harm behavior, she refused to walk and was placed in a restraint chair.

10. Escorting officers, Defendants Gillespie and Merritt, were angry because Plaintiff caused them extra trouble and they promised physical retribution.

11. Moreover, Plaintiff had previously written an affidavit describing wrongful acts she had witnessed by Officer Merritt and he called her a "snitch."

12. Defendant Merritt told her she should have minded her own business.

13. Plaintiff repeated to the camera the threats they had made to harm her.

14. On December 17, 2018, Plaintiff began a hunger strike because she wanted to speak to the Warden about the way she was being mistreated.

15. On December 19, 2018, at approximately 9:30-10:00 a.m., Plaintiff was taken from her cell to medical at the orders of Capt. William B. Blitch.

16. Defendant Blitch was upset because of the difficulties Plaintiff had caused officers on December 16, 2018, and promised her that she would pay for it.

17. Capt. Blitch told Plaintiff he was planning to use chemical agents on her and send in the Cell Extraction Team in to teach her a lesson.

18. Cell Extraction Teams are five-officer teams who enter cells prepared to use extreme physical force to counter inmate resistance.

19. The Cell Extraction Teams' overwhelming display of force is often counter-productive and could be avoided with appropriate de-escalation techniques, especially when an inmate is exhibiting suicidal or self-injurious behaviors.

20. Cell Extraction Teams are also used to punish troublesome inmates.

21. Although the Cell Extraction Teams are supposed to be video-recorded, the video recorder is usually held at a distance outside the cell.

22. Capt. Blitch referred to Plaintiff's alleged noncompliance on December 16, 2018 at 5:30 p.m. as the reason for her punishment.

23. Just then, Plaintiff saw Colonel Michael Honour so she sat down on the floor and told him how Blitch had threatened her with gas and a cell extraction.

24. Colonel Honour told Plaintiff, "he's not going to do that," so she got up.

25. At about 10:45 to 11:00 a.m., Plaintiff was returned to her cell.

26. About five minutes later, Capt. Blitch came to Plaintiff's cell and asked Plaintiff, "Are you ready?" and then departed.

27. Mental Health Counselor Adam Peter Dahlman arrived at the cell along with Psychologist George Emanoilidis and spoke with Plaintiff.

28. Plaintiff told the mental health providers of Capt. Blitch's promise to harm her and began to inflict harm on herself as a means of seeking help.

29. Dr. Emanoilidis left and then returned and told Plaintiff he was ordering that Plaintiff receive an Emergency Treatment Order, which is a drug injection, and be placed on Self-Harm Observation Status (SHOS).

30. On hearing she would be placed on SHOS, Plaintiff ceased harming herself and told Dahlman, Blitch, and Lieutenants Kyle D. Knight and Teddy L. Tomlin she would cooperate, accept the ETO, and be placed on SHOS.

31. Capt. Blitch and the Lieutenants did not have Plaintiff placed in restraints but left the area while Counselor Dahlman remained behind.

32. Plaintiff prepared to be strip searched and submit to restraints and was surprised with the officers did not unlock the food slot to permit her to turn

over her clothing and submit to restraints to be escorted to medical.

33. About 11:15 a.m., Dahlman left and the cell extraction team arrived.

34. With the arrival of the Cell Extraction Team, Plaintiff realized that the Defendants had no intention of permitting her to submit to restraints.

35. The team consisted of Sgt. Kenneth Porr, Wesley E. Rogers, and Officer Tyrell M. Reagor, as well as Brett Gillespie and Austin Merritt who had threatened to physically harm her three days earlier.

36. Lieutenants Tomlin and Knight asked on camera for Plaintiff to submit to restraints and Plaintiff quickly responded she was willing to comply.

37. Without opening the food slot to permit Plaintiff to hand out her clothes or submit to hand restraints, Lt. Knight ordered that the cell door be rolled.

38. The Cell Extraction Team immediately rushed into the cell.

39. As the cell extraction team entered the cell, Plaintiff lay down on the floor with her hands behind her back. Lt. Tomlin smiled and winked at her.

40. Each member of the team could see Plaintiff submitting to restraints.

41. The first team member, Sgt. Kenneth Porr, threw the body shield aside and began to twist the Plaintiff's left wrist to inflict pain.

42. Team member two, Sgt. Austin Merritt, got on Plaintiff's right side and began to punch her on the side of her head.

43. Team member three, Sgt. Brett Gillespie, put his hands around Plaintiff's

neck and began to bang her head on the concrete floor.

44. Team members four and five, Sgt. Wesley Rogers and Tyrell Reagor, blocked the hand-held camera with their bodies yelling, "stop resisting."

45. Plaintiff was not resisting but was being very severely beaten.

46. Rogers and Reagor were able to see Plaintiff was not resisting.

47. No member of the Cell Extraction Team tried to intervene to prevent the physical abuse by the others, though they would have been able to do so.

48. After the severe beating, Plaintiff was finally placed in restraints.

49. Capt. Blitch told Plaintiff, "I told you that I was gonna get you."

50. Plaintiff was taken to medical to receive a post use of force examination.

51. Strips were glued to close the gashes on her left eyebrow and mid-forehead.

52. The ETO shot was administered and Plaintiff was placed on SHOS.

53. On December 20, 2018, Plaintiff was transported to Memorial Hospital in Jacksonville, Florida for further examination and treatment.

54. An x-ray was taken of Plaintiff's left wrist which was found to be fractured.

55. A CT scan was conducted of Plaintiff's head and face and it was determined that the Plaintiff had suffered fractures around her left eye socket.

56. Plaintiff received a blood transfusion at the hospital.

57. After the use of force, Plaintiff suffered impaired vision and intense headaches that have not abated, as well as severe emotional distress.

## <u>Causes of Action</u>

### I.  42 U.S.C. §1983: Eighth Amendment Excessive Force (Blitch, Knight, Tomlin, Porr, Merritt, Gillespie, Rogers, and Reagor)

58.  Plaintiff is entitled to relief against Defendants Blitch, Knight, Tomlin, Porr, Merritt, Gillespie, Rogers, and Reagor, for violation of the Eighth Amendment to the U.S. Constitution sustained by Plaintiff at their hands as a result of their use of Excessive Force at Captain Blitch's direction.

59.  Defendants used excessive force without a valid penological purpose.

60.  At the time, Plaintiff was compliant and represented no threat.

61.  The acts of the Defendants were done under color of state law.

62.  As a direct and proximate result of the wrongful acts, Plaintiff suffered bodily injury, pain and suffering, humiliation, and mental anguish, which injuries are continuing, and Plaintiff will suffer such injuries in the future.

63.  Under the above facts, Plaintiff is entitled to both compensatory and punitive damages against the defendants individually named.

64.  As it was necessary for Plaintiff to retain undersigned counsel, Plaintiff is entitled to an award of attorneys' fees and costs.

WHEREFORE, Plaintiff seeks relief as noted below.

### II. 42 U.S.C. §1983: Eighth Amendment Failure to Intervene (Blitch, Knight, Tomlin, Porr, Merritt, Gillespie, Rogers, and Reagor)

65.  Plaintiff is entitled to relief against Defendants Blitch, Knight, Tomlin, Porr,

Merritt, Gillespie, Rogers, and Reagor, for violation of the Eighth Amendment to the U.S. Constitution sustained by Plaintiff at their hands as a result of their Failure to Intervene to prevent the constitutional abuse.

66. Defendants all failed to intervene to stop the abuse, though able.

67. The officers' affirmative duty to intervene arose from being present at the scene, aware of the use of excessive force, and able to stop it.

68. The officers' affirmative duty to intervene also arose from assisting the actual attacker to place the victim in a vulnerable position.

69. At the time, Plaintiff was compliant and represented no threat.

70. The acts of the Defendants were done under color of state law.

71. As a direct and proximate result of the wrongful acts, Plaintiff suffered bodily injury, pain and suffering, humiliation, and mental anguish, which injuries are continuing, and Plaintiff will suffer such injuries in the future.

72. Under the above facts, Plaintiff is entitled to both compensatory and punitive damages against the defendants individually named.

73. As it was necessary for Plaintiff to retain undersigned counsel, Plaintiff is entitled to an award of attorneys' fees and costs.

WHEREFORE, Plaintiff seeks relief as noted below.

### III.    Violations of the ADA and Rehabilitation Act (Mark Inch)

74. Plaintiff is entitled to relief for disability discrimination against FDC for

violating Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101

et seq., (hereinafter "ADA") which provides in pertinent part:

> No qualified individual with a disability shall, by reason of such
> disability, be excluded from participation in or be denied the benefits of
> the services, programs, or activities of a public entity, or be subjected to
> discrimination by such entity.

42 U.S.C. § 12132

Title II of the Act prohibits, among other things:

- limiting a qualified individual's enjoyment of any right, privilege,
  advantage, or opportunity enjoyed by others receiving an aid, benefit,
  or service of an agency; and

- subjecting a qualified individual to discrimination under any program
  or activity conducted by an agency.

28 C.F.R. § 39.130.

75. Plaintiff was disabled as defined at 42 U.S.C. § 12102(2), as she suffered a

physical impairment that substantially limited one or more of her major life

activities, including, but not limited to, a mental health disability.

76. Plaintiff was a "qualified individual" under 42 U.S.C. § 12131(2): "Qualified

Individual" means a disabled person who meets the essential eligibility

requirements for services or participation in programs or activities provided

by the entity (with or without regard to any auxiliary aids or modifications).

77. FDC is a public entity that has violated Title II of the ADA.

78. FDC is an entity that receives federal funding.

79. Florida State Prison is a facility and its operations comprise programs and services for purposes of Title II of the ADA.

80. Defendant FDC authorized its agents and employees to act for Defendant FDC when they committed the ADA violations alleged herein.

81. Defendant FDC's agents and employees accepted the undertaking of acting on behalf of FDC when they committed the ADA violations alleged herein.

82. Defendant FDC had control over its agents and employees when they committed the ADA violations alleged herein.

83. The ADA violations alleged herein and committed by Defendant FDC's agents and employees were done while acting within the course and scope of their employ and/or agency with Defendant FDC.

84. Defendant FDC is vicariously liable for the actions of its agents and employees when they committed the ADA violations alleged herein.

85. Plaintiff's need for a reasonable accommodation was known and obvious.

86. Plaintiff sought accommodations for her disabilities.

87. Defendant FDC, its employees, and agents knew and/or should have known of Plaintiff's need for a reasonable accommodation.

88. FDC, its agents and employees, acted intentionally and/or with deliberate indifference to Plaintiff's need for a reasonable accommodation by:

    a. failure to accommodate her mental health disability;

   b.  permitting practices whereby inmates with mental health disabilities are punished when they display disability-based limitations;

   c.  failing and intentionally refusing to train Defendant FDC staff regarding the safe management of mentally ill inmates;

   d.  failing and intentionally refusing to consider Plaintiff's particular disability when moving and escorting her;

   e.  permitting sadistic officers to bait and abuse Plaintiff and failing to use alternatives to brute force to manage and care for Plaintiff.

89.  As a proximate result of defendant FDC's, its employees', and agents' failure and intentional refusal to provide Plaintiff with a reasonable accommodation for her disability, she suffered serious physical harm.

   WHEREFORE, Plaintiff seeks damages as noted below.

### IV.   Abuse or Neglect of a Vulnerable Adult § 415.1111, Fla.Stat.

90.  Plaintiff is entitled to relief against Defendants Blitch, Knight, Tomlin, Porr, Merritt, Gillespie, Rogers, and Reagor under the Adult Protective Services Act.

91.  Plaintiff met the definition of a "vulnerable adult" in that she was an adult whose ability to perform the normal activities of daily living or to provide for his own care was impaired due to a mental infirmity.

92.  The above Defendants assumed the responsibility for a caregiver relationship, involving the regular and frequent care of Plaintiff.

93.  Defendants had a duty to avoid acts or omissions that caused significant impairment to Plaintiff's mental and physical health.

94. Defendants had a duty to provide care, supervision and services necessary to Plaintiff, including safe escorts for medical and mental health services.

95. Defendants breached that duty of care by abusive and neglectful acts that could reasonably be expected to cause serious physical and mental injury.

96. Defendants breached their duties to Plaintiff in one or more of the following:

    a. Acting in a way that caused or was likely to cause significant impairment to Plaintiff's physical, mental, and emotional health;

    b. Failing to safely escort Plaintiff for medical or mental health care;

    c. As to Blitch, failing to properly hire, supervise and discipline employees involved in the incarceration and care of vulnerable inmates;

    d. As to Blitch, failure to timely terminate employees who were unfit;

    e. Failing to follow normal and accepted humane corrections practices and procedures relating to the safe care of vulnerable inmates;

    f. Failing to provide care, supervision, and services necessary to maintain the physical and mental health of Plaintiff, including necessary treatment, supervision, monitoring and medical services, that a prudent person would consider essential for the well-being of a vulnerable adult;

97. As a direct and proximate result of Defendants' breach of duty to the Plaintiff, Plaintiff suffered severe physical injuries and emotional distress.

98. Defendants' acts and omissions as stated above constitute "abuse" as that term is defined in § 415.102(1), Florida Statutes, as well as "neglect" as that term is defined in § 415.102(15), Florida Statutes.

99. Pursuant to § 415.1111, Florida Statutes, Plaintiff is entitled to actual damages from Defendant, as well as attorneys' fees and costs.

100. Plaintiffs will seek punitive damages provided for in the statute.

WHEREFORE, Plaintiff prays for judgment as noted below.

### Prayer for Relief

A. Compensatory damages against defendants sued individually;

B. Nominal damages to the extent any injury is deemed de minimis;

C. Punitive damages against defendants sued individually;

D. Attorney's fees pursuant to 42 U.S.C. §1988 and costs of litigation;

E. A trial by jury on all issues so triable;

F. Such other relief as justice may require.

Respectfully Submitted, *s/ James V. Cook*
JAMES V. COOK, ESQ., FBN 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

ATTORNEY FOR PLAINTIFF