UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAC'QUANN HARVARD,

    Plaintiff,

vs.

MARK S. INCH, et al.,

    Defendants.

Case No. 3:19cv1147-HES-PDB

**PLAINTIFF'S FINAL OMNIBUS MOTION TO COMPEL
BETTER ANSWERS AND FOR SANCTIONS**

COMES NOW Plaintiff JAC'QUANN HARVARD, through counsel, and Moves this Honorable Court for its Order Compelling Better Answers from all Defendants and for sanctions, and would show as follows:

1. Plaintiff filed five motions for better answers to discovery and for sanctions (ECF 87, 89, 90, 91, and 92). Defendants responded to ECF 87 and 89, and then, after a series of motions for extension of time (ECF 98, 101, 103, 104) and a motion to modify the case management schedule (ECF 102), the Court terminated the pending motions to compel and provided for 30 days in which parties could attempt to resolve the motions. (ECF 105).

2. After Plaintiff filed an Omnibus Motion to Compel on January 14, 2022, the Court's deadline, Defendant represented to the Court that Plaintiff had abruptly broken off conferrals and filed his Omnibus Motion to Compel

1

without notice. (ECF 109 at 5). Actually, Plaintiff filed the Motion on the date it was due, after five e-mails back and forth that day with Defendants arguing that they had provided everything.[1] The Parties continued to confer throughout the final day and the last e-mail that day was Plaintiff's.

3. On January 18, 2022, four days after the Omnibus Motion to Compel was filed, Plaintiff got the final C Dorm logs. On March 18, 2022, she got the long-awaited Use of Force Participant Advisory Records. On March 25, 2022, Plaintiff got – not the requested asset disclosures (in case they want to argue limitation of assets against punitive damages) – but just W2 records.

4. Also on March 25, 2022, Plaintiff was informed that the Department was refusing to un-redact the discipline and use of force records.

5. We are now 14 months out from our initial discovery requests. Plaintiff's counsel has spent 138.3 hours just fighting for discovery.

---

[1] The January 14, 2022 exchange (See Exh. 1) went as follows:
14:50 "We have provided you with everything you requested . . ." SD
15:42 "You haven't addressed ECF 87 and 89. As to ECF 90, 91, and 92 . . . (We lack training videos, Dorm Logs, Duty Rosters, Unredacted discipline and use of force records)" JC
15:49 ". . . logs and duty rosters were provided. We gave you a declaration stating there are no training videos. . . (They ask what we want unredacted). SD
15:55 "I got a file with A and B logs (not C). We got an affidavit about video in a particular course but there were other videos mentioned in other courses . . . (we sent specifics on improper redactions – again.) JC
16:02 "We sent you the attached C dorm log back in October . . ." SD
16:20 "The records you attached are Daily Records of Special Housing, not Dorm Logs . . ." JC
*Plaintiff received no further communications from Defendants that night.*

6. Leaving aside most of the many things that have been reasonably requested, but not provided by Defendants, Plaintiff will focus on redaction of discipline and use of force records as extremely improper.

A. **<u>Improper Redactions by Defendants Blitch, Tomlin and Knight</u>[2]**

| Interrogatory | Answer |
|---|---|
| 3. Please list all corrective actions against you, including counseling, by any law enforcement employer, including the date of the corrective action, the date of the incident on which it was based, the reason for the corrective action, the type of corrective action given, and whether you appealed the corrective action taken against you and the outcome of any such appeal. | Pursuant to Federal Rule of Civil Procedure 33, please refer to my personnel file. |

7. A review of the referenced personnel records reveals heavy redactions in Defendants' disciplinary records, including narratives that provide the "who, what, where, when, why, and how" of the basis of the disciplinary action. (ECF 89-3, Personnel File Redactions).



8. The figure to the right is a 7/22/19 Use of Force Report (Id. at 8) that was the basis of a disciplinary action wherein Defendant Teddy Tomlin was suspended for 12 hours for failing to intervene in a use of force that a

---

[2] Defendants responded to discovery in virtually the same words so they are taken together.

3

review of the video showed as occurring after the subject inmate said he was "ready to cuff up." This is exactly the scenario in Plaintiff's case. Defendant Tomlin sent in a cell extraction team after Plaintiff repeatedly said she would "cuff up" and would "submit to hand restraints." The redactions obscure the name of the inmate, the location of the use of force, the nature of the use of force, and nearly all descriptions of the use of force.

9. The Notice of Suspension to Lt. Tomlin was also redacted to obscure the name of the inmate subjected to the force. No less-redacted file was ever produced for Lt. Tomlin. This information may be admissible to show motive and intent under Fed.R.Evid. 404. The redactions, which are exceptional even in this case, make the incident difficult to investigate.

10. The notice of suspension states Lt. Tomlin (now Captain) was still on probationary status for his promotion to Lieutenant and "Actions of this nature are not acceptable." (Id. at 10). Defendant Tomlin was promoted to Lieutenant on December 14, 2018, just five days before the use of force that sent Plaintiff to the hospital with fractured facial bones. Tomlin's Use of Force records are also improperly redacted. (Id. at 12-15).

11. Among Captain (now Major) Blitch's use of force records, there are also some questionable redactions. (Id. at 3-5).

12. Kyle Knight also has improper redactions to his personnel file, including a

4

redaction of the contact information of his references. (Id. at 16). Unexplained redactions in the "brief description of a Use of Force on inmates. (Id. at 17-25).[3]

13. Plaintiff seeks an Order that disciplinary records and their exhibits not be redacted beyond the guidelines expressed in Fed.R.Civ.P. 5.2(a), to wit:

(a) Redacted Filings. Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, a party or nonparty making the filing may include only:

(1) the last four digits of the social-security number and taxpayer-identification number;

(2) the year of the individual's birth;

(3) the minor's initials; and

(4) the last four digits of the financial-account number.

To this, Plaintiff would only add home address.

### B. Improper Redactions by Cell Extraction Officers

14. Plaintiff served Requests for Discovery on Defendants Gillespie, Porr, Merritt, Rogers, and Reagor, on May 16, 2021. (ECF 90-1, First Requests and Responses for Discovery Extraction Team). Defendants served timely responses on June 15, 2021. The responses included improper redactions that obscured potential material evidence,

---

[3] It also appears the Mr. Knight's file must have been flagged by the Use of Force Participant Advisory for his frequent uses of force for at least three years: 2012, 2013, and 2015.

| Interrogatory | Defendant's Answer |
|---|---|
| 3. Please list all corrective actions against you, including counseling, by any law enforcement employer, including the date of the corrective action, the date of the incident on which it was based, the reason for the corrective action, the type of corrective action given, and whether you appealed the corrective action taken against you and the outcome of any such appeal. | GILLESPIE: I only recall receiving discipline one time during my employment. That discipline came from call-ins. Pursuant to Federal Rule of Civil Procedure 33, please refer to my personnel file.<br><br>ALL OTHERS: Pursuant to Federal Rule of Civil Procedure 33, please refer to my personnel file. |

**Basis of Request for Better Answer:**

15. A review of the personnel records of the Cell Extraction Team members showed heavy redactions including records of discipline and use of force. These redactions often appear in narratives that provide the "who, what, where, when, why, and how" of the disciplinary action. (ECF 90-2, Personnel File Redactions). For instance, the figures to the right are from Sgt. Porr's disciplinary records that made up over half of the disciplinary and use of force records of the five Cell Extraction Team members. In one sustained use of force against Porr, the redactions





6

obscure the name of the inmate and some of his allegations. (Id. at 56). In the bottom figure, the report simply makes no sense because of the heavy redactions. (Id. at 66). This information may be admissible to show motive and intent under Fed.R.Evid. 404. The redactions, which are exceptional even in this case, make incidents difficult to investigate. There is no reason why prison officials' disciplinary records should be redacted beyond the guidelines expressed in Fed.R.Civ.P. 5.2(a).

## MEMORANDUM OF LAW

Under Rule 37(a)(3)(B), Federal Rules of Civil Procedure, a party may move for an order compelling disclosure and for sanctions when a party fails to respond to discovery. Under Rule 37(a)(4), Federal Rules of Civil Procedure, an evasive or incomplete answer to discovery is to be treated as a failure to answer. As a sanction therefor, the party making the evasive or incomplete answer may be compelled to answer and to pay the reasonable expenses of the motion, including attorney's fees unless the court finds that the moving party did not make a good faith effort to obtain the discovery without court action.

The Court has the power to order the payment of the reasonable expenses, including fees, of the party making a justified motion to compel under Rule 37(5), Federal Rules of Civil Procedure. The Court also has the power to sanction parties for incomplete discovery responses pursuant to Rule 26(g), Federal Rules of Civil

Procedure, which require parties to sign discovery responses, effectively certifying that the responses are made after reasonable inquiry, are complete and correct.

Fed.R.Civ.P. 26(g)(1)(A), provides that attorneys have a duty to sign discovery disclosures and that in signing, certify they have made a reasonable inquiry and that the disclosure is, to the best of their knowledge, complete and correct as of the time it is made. Although Rule 26(g) is modeled after Rule 11, Rule 26(g) does not require a signing attorney to certify the *truthfulness* of the client's answers but rather the lawyer must make "a reasonable effort to assure that the client has provided all the available information and documents responsive to the discovery demand." Fed.R.Civ.P. 26(g) advisory committee's note.

### A. Defendants Take an Impermissibly Narrow View of Discovery

The latest edition of Middle District Discovery, 2021 ed., sets out a comprehensive convention for discovery etiquette.

> Attorneys should not make objections solely to avoid producing documents that are relevant to any party's claim or defense and proportional to the needs of the case. Absent compelling circumstances, failure to assert an objection to a request for production within the time allowed for responding constitutes a waiver and will preclude a party from asserting the objection in response to a motion to compel. Objections to requests for production should be specific, not generalized, and should be in compliance with the provisions of Rule 34(b), Federal Rules of Civil Procedure. Objections to portions of a document request do not excuse the responding party from producing those documents to which there is no objection. Specific objections should be matched to specific requests. General or blanket objections should be used only when they apply to every request. Boilerplate objections such as "the request is overly broad, unduly burdensome, and outside the scope of permissible discovery" are insufficient without a full, fair explanation

8

particular to the facts of the case.

A party responding to a discovery request should make diligent effort to provide a response that (i) fairly meets and complies with the discovery request and (ii) imposes no unnecessary burden or expense on the requesting party. Middle District Discovery, 2021 Edition, I-C-4, In their objections, Defendants take an impermissibly narrow view of their duty under Fed.R.Civ.P. 26. As noted in *Merrill v. Waffle House, Inc*. 227 F.R.D. 467 (N.D.Tex.,2005):

> Unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed. Id. "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."

*Id*. at 470-471, *quoting Scott v. Leavenworth Unified School Dist. No. 453*, 190 F.R.D. 583, 585 (D.Kan.1999), *citing Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D.Kan.1999). In their heavy redactions, Defendants decline to provide information that is potentially important to Plaintiff's ability to prepare for trial.

> Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request . . . . An objection to an interrogatory or document request must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is "overly broad and burdensome" or "oppressive" or "vexatious" or "not reasonably calculated to lead to the discovery of admissible evidence."

*Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084, 1102 (D. N.J. 1996) (and

9

cases cited, citations omitted). Such "stonewalling tactics" constitute discovery abuse. *First Healthcare Corp. v. Hamilton*, 740 So. 2d 1189, 1194 (Fla. 4th DCA 1999). "[I]ntoning the 'overly broad and burdensome' litany, without more, does not express a valid objection." *Mead Corporation v. Riverwood Natural Resources Corporation*, 145 F.R.D. 512, 515 (D. Minn. 1992).

Federal Rules of Civil Procedure authorize parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...." Rule 26(b)(1), Federal Rules of Civil Procedure. The information sought in these discovery requests is relevant to issues of fact which may determine whether parties in this case were deliberately indifferent or intentionally violated the constitutional rights of the Plaintiff.

### B. Public Employee Personnel Records Are Not Specially Protected

Defendants have heavily redacted personnel records including disciplinary records and Use of Force logs. The Florida Department of Corrections often responds to discovery as if it were a public records request under state law. Federal discovery is not governed by state law. Beyond the redaction requirements of Fed.R.Civ.P. 5.2(a) on materials filed, courts can, of course, grant protections under Fed.R.Civ.P. 26(c)(1) for good cause and as a matter of comity.

However, even under Florida law, it is clear that the personnel records of public employees receive no special protection. The Florida Supreme Court has

held that "the policy of this state favors open and accessible records" and that for public employees, "personnel records are 'public records" within the statute." *News-Press Pub. Co. v. Wisher*, 345 So.2d 646 (Fla. 1977) (overturning district court denial of county employee's records that might be 'embarrassing.'). Even employee records of a tax-supported hospital are public records within the scope of Chapter 119. *Michel v. Douglas*, 464 So.2d 545, 546 (Fla. 1985) (What is kept in personnel files is largely a matter of judgment of the employer, but whatever is so kept is public record and subject to being published."). The Florida Supreme Court went on to suggest "that public agencies monitor their personnel records and exclude information not related to their employees' qualifications for their jobs or to the performance of their jobs." *Id.* By its specific wording, Article I, Section 23 of the Florida Constitution does not provide a right of privacy in public records.

Thus, personnel records of public agencies or tax-supported entities are public records by operation of Chapter 119, Florida Statutes. In the Eleventh Circuit, when a personnel file becomes a public record by law, the personnel file has been made public. *Buxton v. City of Plant City, Florida*, 871 F.2d 1037 (11th Cir. 1989). Florida Courts define "public records" as being "any material prepared in connection with official agency business which is intended to perpetuate, communicate, or formalize knowledge of some type." *Shevin v. Byron*, 379 So.2d 633, 640 (Fla. 19880).

11

By any standard, the redactions made within the personnel records of the Defendants are excessive and improper. Above all, the records of disciplinary actions – essentially a certification that a public employee has violated public rules in conducting public business, should be open to public review. Even more should such public employee records be made available in federal discovery in a civil rights case under 42 U.S.C. 1983, a statute designed to remedy the most deplorable violations of public trust by public actors with deep roots in American history.

Plaintiff conducted a Fed.R.Civ.P. 30(b)(6) deposition with a number of Florida Department of Corrections representatives. Katrina Seck was designated by the Department to answer questions about redactions. She testified as follows:

a. The name of an inmate was redacted in a report, he or she might be a victim of a crime or sexual abuse. (Exh. 2, Seck Depo at 10:1-14)

b. Ms. Seck believed that an employee i.d. number was redacted it might be to protect identity but did not know why the i.d. number would be redacted if the name of the employee was not redacted. (Id. at 13:19-25).

c. Information that would "jeopardize a person's safety" under 945.10(1)(e) Florida Statutes. Ms. Seck felt "it is very discretionary." She said it might be used to protect a confidential informant. (Id. at 15:1-5; 16-21).

d. Duty Rosters (work schedules) might be protected under 119.071(2)(d) Fla.Stat. because the work pertains to surveillance. (Id. at 16:15-25) or 119.071(3)(1) because it pertains to security. (Id. at 17:24-25; 18:4-9).

e. Times of security checks or dorm designations might be redacted because the information could compromise security. (Id. at 18:22-19-4).

f. The addresses of neighbor references might be redacted because they might give a clue to where the officer lives. (Id. at 22:7-20).

 g. The legal advisor who works with record redactors has never said that the restrictions on information should be narrowly drawn. (Id. at 23:2-5).

 h. Ms. Seck was not aware why references to the use of chemical agents would be redacted. (Id. at 24:16-20).

 i. Ms. Seck was not aware why references to the fact that force was used would be redacted. (Id. at 26:7-20).

 j. Ms. Seck could not think of a reason to redact the identity of an inmate who was abused if there were no criminal charges. (Id. at 29:1-6)

 k. In general, Ms. Seck believed that the personnel file redactions were applications of Florida Public Records laws and Fla.Stat. 945.10.

Plaintiff requests that the Court review unredacted copies of the records depicted in Plaintiff's Exhibits, ECF 89-2 and 90-2 *in camera* and compare them with the redacted versions. Plaintiff's counsel signed a protective agreement (Exh. 3) that protects information the FDC deems sensitive. Plaintiff seeks unredacted copies of all those records subject to whatever further protections seem just.

### C. Sanctions Are Called for Under the Circumstances of this Case

Although ultimately most discovery requests were finally responded to, the fight for compliance with discovery has caused counsel for Plaintiff to effectively double the hours that should have been expended on this case. It is now well over a year since Plaintiff first sought essential records. For instance, on January 29, 2021, Plaintiff requested training records for the individual officers from Secretary Inch. Secretary Inch objected that he was only required to provide records relating to the counts naming him. Thereafter, Plaintiff sought to subpoena the records

13

from the Department. Defendant Inch responded by moving to quash the subpoena because he, in his official capacity, was the party representing the Department. (ECF 84). Ultimately, the Secretary relented and provided records showing relevant courses the FDC employees had taken. However, those records were not provided until November 13, 2021, long after discovery had closed and it was too late to depose the officers or instructors about the courses they had taken. The issue of whether officers acted properly according to their training or were essentially following their own agenda according to their own biases is a salient issue in this case. Lieut. Tomlin maintained that it was not necessary for him to unlock the cuff port even at the time that he was demanding that Plaintiff present her hands for restraints and Plaintiff was agreeing repeatedly to do so. Defendants maintain there was no problem with including officers in the Forced Cell Extraction Team who Plaintiff had testified against in a lawsuit and who had been accused of threatening her with physical harm just days earlier.

    The Defendant Secretary also takes the position that because the excessive force allegations are directed at the individual officers and he is not alleged to have physically participated in the force, he, in his official capacity, need not respond to discovery of the training offered to and/or required of those officers. Fed.R.Civ.P. 26(b)(1) provides for discovery "that is relevant to *any party's* claim or defense."

    WHEREFORE, Plaintiff moves this Honorable Court for Relief as follows:

    A.   Production of unredacted discipline and use of force records;
    B.   Limitation of Defendants' proof at trial as moved in limine; and
    C.   Order costs and fees occasioned by this Motion.

Respectfully Submitted,  *s/James V. Cook*
JAMES V. COOK, ESQ.
Florida Bar Number 0966853
Law Office of James Cook
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 222-8080; 850 561-0836 fax
cookjv@gmail.com

ATTORNEY FOR PLAINTIFF

I CERTIFY counsel for Plaintiff have conferred with opposing counsel in good faith by numerous e-mails to resolve the discovery issues in this case and opposing counsel does not agree to the relief sought.

I CERTIFY this Memorandum conforms with Local Rules as to type and size.

I CERTIFY the foregoing was filed electronically on 3/28/2022, and served on all counsel registered to be notified by the CM/ECF electronic mail system:

*s/James V. Cook*